IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOMINIC VARGAS<br>728 East End Avenue<br>Pittsburgh, PA 15221<br><br>And<br><br>ANNE HICKOK<br>5856 Old Oak Ridge Road<br>Apartment 602<br>Greensboro, NC 27410<br><br><br>On behalf of themselves<br>And all others similarly<br>Situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>GENERAL NUTRITION<br>CENTERS, INC.,<br>A Delaware Corporation,<br>Registered Agent<br>The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801<br><br>and<br><br>GENERAL NUTRITION<br>CORPORATION<br>300 Sixth Avenue<br>Pittsburgh, PA 15222<br><br><br>Defendants. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Case No. _____<br><br><br><br>ELECTRONICALLY FILED |

**REPRESENTATIVE COMPLAINT FOR VIOLATION OF**
**<u>THE FAIR LABOR STANDARDS ACT</u>**

Plaintiffs Dominic Vargas and Anne Hickok, on behalf of themselves and all similarly situated persons, by their undersigned counsel, based on personal knowledge and information and belief formed after reasonable investigation, allege as follows:

## INTRODUCTION

1. This is an action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("Act" or "FLSA").

2. In violation of the FLSA, Defendants General Nutrition Centers, Inc. and its relevant operating subsidiaries, including but not necessarily limited to General Nutrition Corporation (collectively "GNC"), have maintained a set of unlawful policies and practices calculated to prevent employees from claiming lawful compensation for overtime employment. Plaintiffs seek all relief available under the FLSA including injunctive relief and damages.

## PARTIES

3. Plaintiff Dominic Vargas ("Vargas") resides in Pittsburgh, Pennsylvania. Vargas worked for GNC for a period of approximately four years. During the period of approximately May 2008 until January 2010, Vargas worked as the "Manager" of GNC's Edgewood Town Center Store in Edgewood, Pennsylvania.

4. Plaintiff Anne Hickok resides in Greensboro, North Carolina. During the period of approximately April 2007 through February 2009, Hickok worked as the Manager of GNC's Battleground Avenue Store in Greensboro, North Carolina.

5. Defendant General Nutrition Centers, Inc. is a Delaware corporation with its principal place of business located at 300 Sixth Avenue, Pittsburgh, PA 15222.

6. Defendant General Nutrition Corp. is a Pennsylvania corporation with its principal place located at 300 Sixth Avenue, Pittsburgh, PA 15222.

7. GNC is engaged in the business of selling health and wellness products including vitamins, minerals, and herbal supplements. GNC conducts this business through a sales network which includes approximately two thousand eight hundred (2,800) company-owned stores which it operates throughout the United States.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## REPRESENTATIVE ACTION ALLEGATIONS

10. Plaintiffs bring this Complaint individually and as a collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. § 216(b), on behalf of all former or current Managers, Assistant Managers, and other "non-exempt" GNC employees affected in their compensation by the unlawful acts, practices, and policies alleged herein.

11. This Complaint may be brought and maintained as an "opt-in" collective action pursuant to FLSA § 16(b), because the claims of Vargas and Hickok are similar to the claims of the other putative plaintiffs encompassed within the scope of this representative action.

12. In relation to the matters in question, Vargas and Hickok are similarly situated to persons within the scope of this representative action in terms of relevant job requirements and pay provisions and because all GNC employees within the scope of this action have been affected by some or all of the unlawful GNC policies and practices alleged herein.

**FACTUAL BACKGROUND**

A.   **Overview**

13.   GNC is a covered "employer" and Plaintiffs are "employees" within the meaning of FLSA.  29 U.S.C. § 203.

14.   FLSA requires employers to pay non-exempt employees as defined under the FLSA wages for all work performed on behalf of the employer and to pay overtime for work performed in excess of forty (40) hours per week.  29 U.S.C. §§ 206 & 207.

15.   In violation of these requirements, as alleged in more detail below, GNC regularly required Plaintiffs and persons within the scope of this representative action, all of whom are or were non-exempt employees as defined under the FLSA and by the defendants herein, to perform work on an uncompensated basis and failed to pay overtime applicable to such uncompensated work.

B.   **GNC's  Policy Against Overtime**

16.   As store managers, Plaintiffs were required to perform a variety of duties consisting primarily of customer sales but also including inventory, record keeping, and store maintenance.

17.   Plaintiffs recorded their work time by means of a centralized computer system known as the "Point of Sales" or "POS" system that GNC operated through the cash registers used in its stores.

18.   Plaintiffs each reported to GNC management personnel, including their immediate supervisors, known as a "Senior Store Manager" ("SSM"), who was responsible for

approximately four stores, and a Regional Sales Director ("RSD"), who supervised a number of SSMs.

19. SSMs and RSDs regularly monitored the amount of base and overtime work recorded by stores under their supervision for compliance with GNC's policies.

20. GNC's policies tended to encourage off-the-clock work by Managers and other employees. For example, GNC Managers were not allowed to have their stores exceed the budgeted number of hours for "part time" or "clerical" employees. If the necessary work could not be performed by such personnel within the budgeted time, the Manager was expected to perform the work himself or herself without incurring overtime.

21. On numerous occasions, Plaintiffs were informed by their respective SSMs and RSDs that GNC strongly discouraged employees from working overtime. For example, GNC required Plaintiffs to participate in weekly conference calls with their respective SSMs and RSDs. During these calls, SSMs and RSDs would "call out" Managers for recording overtime. Additionally, SSMs and RSDs would make direct calls to Managers when overtime was recorded or if clerical hours exceeded budgeted clerical hours.

22. Plaintiffs' time cards reflect that, although they were characterized by GNC as "non-exempt employees subject to a fluctuating work week" for purposes of FLSA, in fact their respective work weeks did not fluctuate in any material respect because the demands of their job compelled them to work forty (40) hours per week but GNC's unwritten policies against the charging of overtime caused them to refrain from recording more than forty hours per week.

23. By virtue of the nature of their jobs, it was impossible for Plaintiffs to perform their job duties without performing more than forty (40) hours of work per week. For example, both plaintiffs regularly found themselves performing paperwork, inventory, and store

maintenance functions during periods that they were not clocked-in. Such off-the-clock work became particularly intensive during certain periods such as in advance of "Gold Card Days," when special pricing was available to customers, in addition to various and frequent promotional campaigns and in advance of a variety of different types of management store inspections.

24. Plaintiff were entitled, but did not receive, overtime compensation for all off-the-clock work.

### C. Countervailing Practice for Recouping Off-The-Clock Work

25. In response to the policies described above, numerous GNC managers found themselves performing work on an uncompensated basis. Over a period of time, these and other GNC personnel developed means of making adjusting time entries through the GNC computer system in order to recoup some of the time that would otherwise be uncompensated. This countervailing practice for recouping otherwise uncompensated work time was approved and, in fact, recommended by various levels of GNC's management that supervised plaintiffs and other members of GNC's workforce.

26. Plaintiff Vargas received informal training from several Managers and SSMs regarding the means by which such adjusting time entries could be made. Additionally, GNC senior personnel, including one or more RSDs, informed Vargas that he should make adjusting time entries in relation to certain work performed while not in the store such as participation in weekly conference calls and in responding to emails.

27. Over the course of his employment at GNC, Vargas regularly made adjusting time entries. For example, when a large shipment of inventory was received, Vargas would work several additional hours beyond his forty (40) hours on an off-the-clock basis. During the

following week, Vargas would recoup a portion of this time by making an adjusting time entry in the computer system. By this means, Vargas would receive credit (though not at an overtime rate) for some of the off-the-clock work that he had previously performed.

28. Vargas made these adjusting entries openly and, in fact, they were recorded as adjusting entries in GNC's computer system, with an asterisk or other mark appearing in the computer system next to each such entry. These entries, in fact, were known by the defendants to constitute adjustments for uncompensated overtime as recounted previously.

29. At all times Vargas made a good faith effort to ensure that any adjusting time entries corresponded to, or was less than, the otherwise uncompensated work he performed as a result of GNC's policy against overtime.

30. Vargas made adjusting time entries based on his belief that he was entitled to compensation for all work he performed on behalf of GNC. Vargas openly conveyed this position to GNC by means of the adjusting time entries that he made using the methodology taught to him by GNC Managers, RSM, and RSDs.

31. Hickok also made adjusting time entries. However, her adjusting time entries were limited to entries by which she reduced her recorded time so as generally not to exceed the maximum allowed work week of forty (40) hours.

32. Both Plaintiffs were instructed and admonished by GNC that unless certain overtime hours were "approved" in advance by GNC, that they would suffer sanctions in terms of their employment at GNC, including, but not limited to being "called-out" on the regular telephone conferences with GNC's management and the implied if not direct threat that the foregoing conduct would negatively impact their ability to remain employed with GNC.

### D.     GNC's Inconsistent Loss Prevention Policies Regard Adjusting Time Entries

33.     GNC supervisory personnel knew of and to some extent tolerated the practice making of adjusting time entries. At some level, this practice facilitated GNC's policy against overtime as, through the use of adjusting entries, work that should have been recorded contemporaneously and would have resulted in overtime was instead recorded and charged as regular time or completely written off by the employee.

34.     Notwithstanding its knowledge of the regular practice of making adjusting time entries, on an inconsistent basis, an upper level of GNC's management took firm enforcement action against employees who made such entries or were accused of having facilitated such entries despite the fact that such conduct had been sanctioned, if not actually encouraged, by GNC as set forth in the allegations contained above.

35.     In this regard, Plaintiff Hickok was forced to resign because she had allegedly signed-off on adjusting time entries made by a part time employee who was required to make bank deposits after clocking out.

36.     Similarly, in January 2010, GNC conducted an "investigation" which resulted in Vargas's termination for "stealing" time from GNC by means of adjusting time entries.

37.     In a highly coercive interrogation, in which Vargas was falsely imprisoned as defined under common law, GNC loss prevention personnel told Vargas that they knew that GNC personnel regularly made adjusting time entries. However, based on the prospect that he might retain his job by being forthcoming, the GNC loss prevention personnel told Vargas that he should admit that what he had done (as taught to him by GNC's Managers, RSMs and RSDs) was wrong. After Vargas wrote and signed a statement to this effect using language suggested by GNC's loss prevention personnel, GNC terminated Vargas.

38. Based on information and belief, GNC's actions in relation to Hickok and Vargas were taken in the hopes that they would "send the message" to other GNC employees regarding the use of adjusting time entries to recoup uncompensated time. Such a message would facilitate GNC's efforts to avoid paying overtime compensation for off-the-clock work.

## CAUSES OF ACTION

### COUNT I
### FAILURE TO PAY OVERTIME IN
### VIOLATION OF FLSA § 7

39. The allegations of paragraphs 1 to 38 are incorporated by reference as if fully rewritten herein.

40. By means of its policy against overtime, GNC has required its admittedly non-exempt employees to perform overtime work on an off-the-clock basis.

41. Additionally, in relation to time claimed through adjusting time entries, GNC has acquired work at the cost of regular time compensation even though such work should have been compensated on an overtime basis.

42. GNC's failure to compensate Plaintiffs and all others similarly situated fully for overtime work performed violates FLSA § 7, 29 U.S.C. § 207.

43. GNC's conduct constitutes a willful violation of FSLA within the meaning of 29 U.S.C. § 255(a).

### COUNT II
### VIOLATION OF FSLA § 15(a)(3)

44. The allegations of paragraphs 1 to 43 are incorporated by reference as if fully rewritten herein.

45. GNC discharged or discriminated against Vargas because, by means of his adjusting time entries as he had been instructed, he had given requiste notice to GNC of his intention to pursue the issue of his hitherto uncompensated overtime and thus within the meaning of the statute he had filed a complaint or otherwise complained to GNC regarding GNC's unlawful action in requiring him to work off-the-clock.

46. After requisite notice as alleged in paragraph 45, GNC discharged or discriminated against Vargas and Hickok based on their actual or perceived expressive conduct in opposing GNC's overtime policies by means of actual or perceived participation in the making of adjusting time entries.

47. Based on information and belief, other current or form GNC employees within the scope of this representative action have been discharged or discriminated against for making adjusting time entries for compensable work or otherwise filing complaints or taking other steps to enforce their rights to overtime compensation under FLSA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief on behalf of themselves and all proposed participants in this representative action as follows:

a. Designation of this action as a collective action pursuant to FLSA § 16 and prompt notice to all potential opt-in class members in accordance with that section.

b. Designation of Plaintiffs Vargas and Hickok as representative plaintiffs.

c. A declaration that the practices complained of herein are in violation of the FLSA.

d. An injunction restraining defendants from continuing with the course of conduct alleged herein.

  e. An order reinstating the named plaintiffs from the positions from which they were discharged.

  f. An award of damages, including liquidated damages, for willful violation of FLSA.

  g. Costs and expenses of this action including reasonable attorney's fees and expert witness fees;

  h. Pre-judgment and post-judgment interest to the extent provided by law; and

  i. Such further and additional relief as the Court deems just.

A JURY TRIAL DEMANDED TO THE EXTENT AVAILABLE UNDER LAW.

        Respectfully submitted,

Dated:  June 29, 2010      s/ Adrian N. Roe
            Adrian N. Roe
            Pa. Bar No. 61391
            Adrian N. Roe P.C.
            Suite 1331 The Gulf Tower
            707 Grant Street
            Pittsburgh, PA 15219
            (412) 434-8187
            aroe@roelawoffice.com

            s/ Michael D. Simon
            Michael D. Simon, Esq.
            Pa. Bar No. 32941
            2520 Mosside Boulevard
            Monroeville, PA  15146
            (412) 856-8107
            mdsimon20@msn.com