**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DOMINIC VARGAS, ANNE HICKOK**<br>*on behalf of themselves and all others similarly*<br>*situated*, <br>              **Plaintiffs,**<br><br>               **v**<br>**GENERAL NUTRITION CENTERS, INC.**<br>*A Delaware Corporation and* **GENERAL**<br>**NUTRITION CORPORATION,**<br>              **Defendants.** | )<br>)<br>)<br>)   **2:10-cv-867**<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER OF COURT**

Presently pending before the Court are the MOTION TO CLARIFY THE CONDITIONAL CERTIFICATION ORDER DATED AUGUST 16, 2012 (Doc. No. 110), filed by Defendants General Nutrition Centers, Inc. and General Nutrition Corporation (collectively, "GNC" or "Defendants"); and the MOTION FOR EQUITABLE TOLLING OF STATUTE OF LIMITATIONS (Doc. No. 114), filed by Plaintiffs Dominic Vargas and Anne Hickock, on behalf of themselves and all other similarly situated (collectively, "Plaintiffs"). The motions have been fully briefed (Doc. Nos. 111, 113, 115, 116, 117, 118, 119) and are now ripe for disposition.

**Background**

The parties, counsel, and the Court are familiar with the background facts of this case and, therefore, the Court will not recite the facts at length again. *See Vargas v. Gen. Nutrition Centers, Inc.*, 2:10-CV-867, 2012 WL 3544733 (W.D. Pa. Aug. 16, 2012) (detailing the factual background and procedural history at length). The following is only a brief recitation of the facts salient to the issues presently before the Court.

A. **Factual Background**

GNC is headed by the Executive Vice President of the company, who, in turn, reports to the Chief Executive Officer of GNCI.  Under the Executive Vice President of GNC are a number of management levels, proceeding from Divisional Vice Presidents, to District Sales Directors, and Regional Sales Directors.  Regional Sales Directors supervise Senior Store Managers, Store Managers, and Assistant Managers.  Likewise, GNC Store Managers report to a Senior Store Manager who was responsible for approximately four outlets and to a Regional Sales Director who in turn supervised a number of Senior Store Managers.

GNC previously employed both named plaintiffs as retail store Managers.  From May 2008 until January 2010, Vargas was the Manager of a GNC store in a suburb of Pittsburgh, Pennsylvania; Hickok, a resident of Greensboro, North Carolina, was employed between April 2007 and February 2009 as a Manager of a GNC store in that area.

The operations of GNC are divided into three Divisions, each of which is headed by a Divisional Vice President, and each Division is divided into three Districts, which are headed by District Sales Directors.  Pennsylvania and North Carolina form parts of Division 1 and Division 2.  Districts are divided into many different Regions (in all, GNC has 109 Regions), which are managed by Regional Sales Directors.  The number of stores in a region can vary, but average 27 stores per region.  In GNC's employment hierarchy, Store Managers are classified as "non-exempt" employees.

According to Plaintiffs, Store Managers often could not complete the assigned work within the forty hours per week for which they were paid and consequently were expected to complete their work "off-the-clock."  Plaintiffs also allege that in order to recoup some of the unpaid time, Managers would make adjusted time entries, a practice that was known and, in fact, recommended by GNC supervisors.  Those claims form the basis for the instant suit.

2

B. **Procedural Background**

Plaintiffs filed this suit on June 29, 2010, on behalf of themselves and all others similarly situated alleging that the practices of GNC, which required former and current Store Managers, Assistant Managers and other non-exempt employees to work off-the-clock without being paid at overtime rates, violated the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. § 201, *et seq.* Initially, this matter was assigned to another member of the United States District Court for the Western District of Pennsylvania.

Plaintiffs filed a First Amended Complaint on September 22, 2010. Count I of the First Amended Complaint sought overtime pay for work in excess of forty hours per week which GNC had willfully refused to pay through its unwritten policy of requiring management employees to work on off-the-clock. Count II alleged retaliatory dismissal in violation of FLSA § 15(a)(3). Defendants answered Count I of the First Amended Complaint and moved to dismiss Count II. On January 6, 2011, the Court granted GNC's motion to dismiss Count II.

The parties engaged in fact discovery pursuant to a case management plan in order to address the issue of conditional certification. During this phase, discovery was limited to stores in North Carolina and Pennsylvania.

Plaintiffs then moved for conditional certification of a collective class on September 12, 2011, which comprised "all present or former managers, assistant managers, and other non-exempt employees of [GNC] in the United States who, during the three years prior to the commencement of this action to the present, may have been affected by the de facto policy against overtime alleged in the First Amended Complaint." Doc. No. 53 at ¶ 4. Plaintiffs also moved for oral argument with regard to conditional certification on November 11, 2011.

While both motions were pending, this matter was transferred to the undersigned on January 5, 2012. Plaintiffs then filed a Motion for Leave to File Second Amended Complaint on

February 23, 2012, and both parties briefed the issue pursuant to this Court's scheduling order. The Court denied that motion in a Memorandum Opinion and Order of Court dated April 12, 2012. During that time, the Court also granted Plaintiffs Motion for Oral Argument on March 9, 2012, which was ultimately heard argument on April 11, 2012 after both parties moved to reschedule on one occasion. The matter was taken under advisement.

By Memorandum Opinion and Order of Court (Doc. No. 109) dated August 16, 2012, Plaintiffs' Motion for Conditional Certification was granted in part and denied in part. *Vargas v. Gen. Nutrition Centers, Inc.*, 2:10-CV-867, 2012 WL 3544733, 2012 U.S. Dist. LEXIS 115614 (W.D. Pa. Aug. 16, 2012). The Court granted the Motion to the extent that it conditionally certified a collective action comprised of

> all present or former Managers of Defendants General Nutrition Centers, Inc. and/or General Nutrition Corporation (collectively "GNC") in Division 1 and Division 2 of the GNC retail organizational structure who, during the three years prior to the commencement of this action to the present, may have been affected by the de facto policy against overtime alleged in the First Amended Complaint.

Doc. No. 109 at 18. The Court denied the Motion to the extent that it did not extend conditional certification of the collective class to include Assistant Store Managers and other non-exempt employees, finding a distinct difference between the store Managers and these other categories of employees. The Court did not, however, specifically delineate whether "all present or former Managers" included Senior Store Managers.

Since the Court entered its August 16, 2012 Order, the parties have met and conferred with regard to a proposed notice to be sent to the putative plaintiffs.[1] The parties not only disagree on the contents of the proposed notice, but also interpret the Order differently.

Defendants now seek this Court to clarify its Order regarding two issues: (1) "[w]hether

---

[1]. The Court's Conditional Certification Order "further directed the parties to confer and submit a joint proposed notice to be sent to all putative plaintiffs, or apprise the Court in writing of the specific reason(s) why they are unable to do so, on or before August 30, 2012." Doc. No. 109 at 18.

the three years statute of limitations applicable to [FLSA] collective actions has been equitably tolled during the more than two years this case has been pending;" and (2) "[w]hether GNC Senior Store Managers are included in the definition of the conditionally certified class." (Doc. No. 111 at 2). In sum, Defendants propose that the Court amend the Certification Order to clarify that notice should be sent to only those current and former Store Managers who held their position within three years from the date of the eventual notice and that GNC Senior Store Managers are not putative plaintiffs.

In response, Plaintiffs filed a Motion which seeks this Court to modify the class definition to permit equitable tolling for a period of fifteen (15) months; their Brief in Opposition also seeks to include Senior Store Mangers in the putative class. Plaintiffs claim that their ability to give notice to the putative class has been unavoidably delayed by circumstances beyond their control and include the following circumstances in their calculation: (1) the four (4) month period of discovery allegedly necessary for the prosecution of their motion for conditional certification; and (2) the eleven (11) month period from the filing of the Motion for Conditional Certification until this Court rendered a decision on August 16, 2012. Plaintiffs further claim that positions of Store Manager and Senior Store Manager deserve similar treatment because their job duties are virtually identical with the exception of two very minor differences.

While briefing on these issues was ongoing, the Court held a status conference on September 6, 2012 where it requested that the parties address the form of notice, namely the appropriateness of using multiple forms of notice and relying on e-mail addresses for communicating with the putative opt-in plaintiffs. Once again, the parties largely dispute these issues.

Defendants suggest that notice by first-class mail is the sole form of notice appropriate in

collective actions and that communication by e-mail is not feasible.  Moreover, Defendants allege that GNC neither provides Store Managers with e-mail addresses nor requires them to submit their personal account to the company.  Defendants also contend that the Pennsylvania Rules of Professional Conduct bar opposing counsel from communicating with the putative opt-in plaintiffs and that the provision of more than one notice will improperly influence their decisions.

Although Plaintiffs agree that notice by first-class mail is an appropriate form of notice and opt-in rights to putative class members, they contend that the Court should permit the additional positing of the notice in the employee area of GNC stores and request the right to reserve and revisit the permissibility of communicating by e-mail.  Plaintiffs argue that should the notices sent by first-class mail be returned as undeliverable, alternative measures of notification may be warranted.  Plaintiffs contend that this substitute form of communication would not violate any ethical rules under these circumstances.

The Court now turns to these contentions.  After careful consideration of the Motions, the multiple filings in support and opposition thereto, and the relevant case law, the Court will modify its August 16, 2012 Order in part and provide for the appropriate method of notice.

## Discussion

As an initial matter, the Court notes that it is not necessary to address the respective Motions separately.  Despite the extensive briefing on these motions, the questions before this Court are relatively straightforward, and the parties generally raise the same three concerns. When read together, the parties seek this Court to decide the issues of equitable tolling, the potential inclusion of Senior Store Managers in the putative class, and the appropriate method(s) of notice.  Accordingly, the Court will address those matters seriatim.

A. **Equitable Tolling**

To qualify for relief under the FLSA, the Act requires that "a party plaintiff must 'commence' his cause of action before the statute of limitations applying to his individual claim has lapsed." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 200 (3d Cir. 2011), *cert. granted*, 11-1059, 2012 WL 609478 (U.S. June 25, 2012) (citing *Sperling v. Hoffmann-La Roche, Inc.*, 24 F.3d 463, 469 (3d Cir. 1994)).   The FLSA further provides that actions to recover unpaid overtime compensation must be commenced within two years of the alleged violation or within three years after the cause of action accrued for willful violations. 29 U.S.C.A. § 255(a); *c.f. Genarie v. PRD Mgmt., Inc.*, CIV.A. 04-2082 (JBS), 2006 WL 436733, at *14 (D. N.J. Feb. 17, 2006) ("It is well settled that a separate cause of action for overtime compensation accrues at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed.") (quotation marks, alterations and citation omitted).

To determine when an FLSA collective action is commenced, section 6 of the Portal-to-Portal Act of 1947 differentiates between named plaintiffs and opt-in plaintiffs.   29 U.S.C.A. § 256; *Symczyk*, 656 F.3d at 200.   For named plaintiffs, an action is commenced on the date they file the Complaint.   29 U.S.C.A. § 256; *see Woodard v. FedEx Freight E., Inc.*, 250 F.R.D. 178, 193 (M.D. Pa. 2008).   For opt-in plaintiffs, however, the action is not commenced until the date on which they file their written consent.[2]   29 U.S.C.A. § 256.   Such written consents will not relate back to the filing date of the Complaint.   *See Woodard*, 250 F.R.D. at 193 (citation

---

2. The United States Court of Appeals for the Third Circuit has recognized that the opt-in mechanism of the FLSA "represents a departure from Rule 23, in which the filing of a complaint tolls the statute of limitations 'as to all asserted members of the class' even if the putative class member is not cognizant of the suit's existence." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 200 (3d Cir. 2011), *cert. granted*, 11-1059, 2012 WL 609478 (U.S. June 25, 2012) (citing *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 350  (1983)).

omitted); *see, e.g.*, *Cahill v. City of New Brunswick*, 99 F. Supp. 2d 464, 479 (D.N.J. 2000)

("Until the non-named plaintiff officers file the prerequisite written consents with this court, they

are not considered joined to a collective action and the statute of limitations on their claims is not

tolled."). Therefore, absent equitable tolling, "the prospective opt-in plaintiffs' recovery will be

limited to the two-or three-year period preceding their written consents." *Woodard*, 250 F.R.D.

at 193.

The doctrine of equitable tolling is read into every federal statute of limitation, including

the FLSA. *Id.*; *see also William A. Graham Co. v. Haughey*, 646 F.3d 138, 147 (3d Cir. 2011),

*cert. denied*, 132 S. Ct. 456 (2011) (discussing the equitable tolling doctrine at length). When

available, the doctrine "can rescue a claim otherwise barred as untimely by a statute of

limitations when a plaintiff has 'been prevented from filing in a timely manner due to

sufficiently inequitable circumstances.'" *Santos ex rel. Beato v. United States*, 559 F.3d 189,

197 (3d Cir. 2009) (quoting *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir.

1999)).

The United States Court of Appeals for the Third Circuit has identified "three principal

situations in which equitable tolling is appropriate." *Podobnik v. U.S. Postal Serv.*, 409 F.3d

584, 591 (3d Cir. 2005) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380,

1387 (3d Cir. 1994)) (citing *Sch. Dist. of City of Allentown v. Marshall*, 657 F.2d 16, 19-20 (3d

Cir.1981))). First, equitable tolling will be allowed "where the defendant has actively misled the

plaintiff respecting the plaintiff's cause of action, and that deception causes non-compliance with

an applicable limitations provision." *Id.* Second, equitable tolling will be recognized "where the

plaintiff in some extraordinary way has been prevented from asserting his rights." *Id.* Third,

equitable tolling will be permitted "where the plaintiff has timely asserted his or her rights

mistakenly in the wrong forum." *Id.*

Relying on Supreme Court precedent, our court of appeals has instructed that equitable tolling "should be applied 'sparingly.'" *Podobnik*, 409 F.3d at 591 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)); *see, e.g.*, *Santos ex rel. Beato*, 559 F.3d at 197 ("The remedy of equitable tolling is extraordinary, and we extend it 'only sparingly.'") (quoting *Irwin*, 498 U.S. at 96) (citing *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005)).  Our court of appeals has further explained that the use of the doctrine is "proper only when the principles of equity would make the rigid application of a limitation period unfair." *Pizio v. HTMT Global Solutions*, CIV.A.09-1136(JLL), 2009 WL 6527591, at *3 (D.N.J. May 26, 2009) (quoting *Petroleos Mexicanos Refinacion v. M/T KING A*, 554 F.3d 99, 110 (3d Cir. 2009)) (quotation marks, alterations and citations omitted).  The plaintiff ultimately bears the burden to show that equitable tolling is appropriate.  *Woodard*, 250 F.R.D. at 193 (citing *Hann v. Crawford & Co.*, CIV.A. 00-1908, 2005 WL 2334676, at *4 (W.D. Pa. Aug. 9, 2005)) (citing *Courtney v. La Salle Univ.*, 124 F.3d 499, 505 (3d Cir. 1997))).

Here, Plaintiffs advance multiple arguments to support their request that this Court equitably toll the statute of limitations for opt-in plaintiffs and apply the three year statute of limitations for the allegedly willful violation from the date any opt-in consents are filed by additional putative members. [3]  After a lengthy discussion of the case law that Plaintiffs find relevant, they first focus their argument on particular circumstances that they allege unfairly precluded putative opt-in class members from timely filing a claim.  To the Plaintiffs, those instances included the redaction of any identifying information of potential opt-in members by

---

[3]. The Court notes that it does not appear Defendants are challenging Plaintiffs use of the three year statute of limitations.

GNC to prevent the discovery of and any contact with former Store Managers, depriving counsel of the ability to alert putative members of their rights.

Plaintiffs next turn their attention to the need to engage in limited discovery before they moved for conditional certification.   Again, Plaintiffs focus their attention on Defendants' (in)actions and particularly emphasize GNC's opposition to the limited discovery as a cause of the delay.   Plaintiffs' discovery request, which followed six months of non-dispositive Rule 12 motion practice, led to a meet and confer process, a motion to compel, a motion for oral argument filed by Defendants, argument on the issue, and the Court's ultimate ruling that came almost five months after their Rule 26(f) conference.   This process, according to Plaintiffs, "literally ate up approximately 120 days of time and also had the predictable effect of causing the filing of extensions time in which to complete discovery as well as to file a motion for conditional certification."   (Doc. No. 113 at 13).   Despite that position, Plaintiffs contend that limited discovery was necessary in order to make the modest evidentiary showing in a case alleging a de facto policy, evidence in the absence of which may have led to the denial of the motion for conditional certification and the dismissal of their collective action.   Thus, as Plaintiffs reason, "[p]rinciples of equity certainly support tolling the limitations period in a de facto policy case when the process of collecting the evidence required to meet the burden of proof necessarily involves extensive discovery."   (Doc. No. 113 at 14).

Finally, Plaintiffs also raise other occurrences throughout this litigation as indications of their diligence in pursuing this matter.   Among those illustrations is the approximate eleven months interval between filing of the motion for conditional certification on September 12, 2011 and this Court's Memorandum Opinion and Order on August 16, 2012.   Plaintiffs also argue that equitable tolling would not prejudice the Defendants because they were aware, upon the filing of

the action, that they faced potential liability for unpaid overtime work dating back for a period of three (3) years.

In contrast, Defendants advance the position that the plain language of the statute controls and that no grounds exist to equitably toll the limitations period.  That is, GNC submits that Plaintiffs have not sufficiently articulated any grounds to satisfy one of the principal situations in which our court of appeals has recognized tolling as appropriate.  Under Defendants' theory, "the mere passage of time" does not render the present circumstances "extraordinary," which GNC would instead attribute to the "natural delay resulting from litigation."  (Doc. No. 111 at 6, 7).  Defendants further posit that the "less rigorous review for conditional certification" results from the strict limitations period, permitting plaintiffs to generally seek earlier conditional certification motions.  *Id.* (citation omitted).

Much like the opposing parties, Defendants also suggest that the discovery requests and multiple extensions filed by Plaintiffs caused any delay in obtaining notice to putative opt-in class members.  Put differently, Defendants submit that "[any] delay in obtaining notice to potential plaintiffs is the result of [their] inaction and desire for protracted discovery before filing their motion for conditional certification—not any conduct on the part of [D]efendants."  (Doc. No. 111 at 8).  Thus, as Defendants conclude, the statute of limitations should continue to run until a putative opt-in plaintiff files the written consent with the Court.

The Court finds and rules that, on the present state of the record, there are no extraordinary circumstances that justify the equitable tolling of the three year statute of limitations with regard to the putative opt-in plaintiffs.  Although Plaintiffs do not specifically invoke the other two principal situations in which our court of appeals deemed equitable tolling appropriate, the Court also notes that there is presently no record evidence to support the

application of this sparingly used doctrine on either of those grounds.

Indeed, the circumstances cited by and the reasoning relied upon by Plaintiffs are not substantially different from other FLSA cases where courts have declined to impose this extraordinary remedy.  For example, in *Muhammad v. GBJ, Inc.*, the court refused to equitably toll the statute of limitations for an FLSA action when the only circumstance cited by plaintiff to warrant the remedy was the need for limited discovery to determine whether certification is appropriate.  CIV.A. H-10-2816, 2011 WL 863785, at *1 (S.D. Tex. Mar. 9, 2011).  The court reasoned that need is "present in many FLSA actions, despite the light burden imposed on plaintiffs seeking conditional certification, and does not qualify as a 'rare and exceptional circumstance.'"  *Id.*; *c.f. Sabol v. Apollo Group, Inc.*, CIV.A. 09-CV-3439, 2010 WL 1956591, at * 3 (E.D. Pa. May 12, 2010) (quoting *Altenbach v. The Lube Center*, No. 1:08–CV–2178, 2009 WL 3818750, at *1 (M.D.Pa. Nov. 13, 2009)) ("'[I]n order to serve the objectives of the collective action, district courts have allowed the conditional certification of a class of putative plaintiffs before significant discovery takes place because the statute of limitations continues to run on unnamed class members' claims until they opt into the collective action.'").

Courts have also cited other aspects of the litigation process in FLSA collective actions and found them not extraordinary circumstances which would justify equitable tolling.  *See, e.g.*, *Tidd v. Adecco USA, Inc.*, CIV.A. 07-11214-GAO, 2008 WL 4286512, at *5 (D. Mass. Sept. 17, 2008) ("[T]he circumstances of this case are not substantially different from other FLSA cases, and acceptance of the plaintiffs' argument would essentially mean that equitable tolling should occur in every FLSA collective action, changing the principle of equitable tolling from the exception to the norm.").  In *Hintergerger v. Catholic Health System*, plaintiffs sought equitable tolling based in part on litigation delays, including where the motion for certification and notice

12

was pending for thirteen months.  08-CV-380S, 2009 WL 3464134, at *14 (W.D.N.Y. Oct. 21, 2009).  The court ultimately addressed those concerns and stated that "[u]nfortunately, the time for consideration of the conditional certification and related motions is reflective of an increasing caseload in this District and does not constitute an extraordinary circumstance for tolling purposes."  *Id.* at *15.  Likewise, in *Love v. Phillips Oil, Inc.*, the court also declined to apply equitable tolling even though nine months had passed between the filing of the complaint and the hearing on the motion for conditional certification.  3:08CV92/MCR/MD, 2008 WL 5157677, at *4 (N.D. Fla. Dec. 9, 2008).  To the court, there was "no suggestion that any potential opt-in plaintiffs who, if they acted with diligence, could not discover they might have a colorable claim for relief and file actions within the limitations period."  *Id.* at *2 n.2.

Other courts have shared this view.  *See Perez v. Comcast*, 10 C 1127, 2011 WL 5979769, at **2-3 (N.D. Ill. Nov. 29, 2011) (collecting cases); *see, e.g.*, *Hintergerger*, 2009 WL 3464134 at *15.  In *Hintergerger*, the District Court for the Western District of New York noted that it could not conclude "that a reasonably prudent potential plaintiff would not have known of his or her right to receive overtime pay after 40 hours."  2009 WL 3464134 at *15.  The court further explained that "[p]ursuit of that right is not dependent on the commencement or certification of a collective action, and a reasonably diligent person could have acted by pursuing an individual or collective action for relief."  *Id.*  Similarly, in *Pendlebury v. Starbucks Coffee Co.*, the District Court for the Southern District of Florida also reasoned that "[a]ny of the plaintiffs could have brought individual actions within the three year time period allowed by the FLSA and "with diligence, any of [the] plaintiffs could have filed individual (or collective) actions within the limitations period."  04-80521-CIV, 2008 WL 700174, at *4 (S.D. Fla. Mar. 13, 2008).  Accordingly, the *Pendlebury* Court refused to toll the statute of limitations.

While the Court does acknowledge the several cases that have allowed equitable tolling of FLSA actions where litigation delays have occurred, the decisions are inapposite to the present circumstances.  *See Perez*, 2011 WL 5979769 at *2 (collecting cases).  For example, those cases involved situations where courts tolled after the filing of a Motion to Stay Proceedings Pending a Decision by the Judicial Panel on Multidistrict Litigation requesting transfer of the matter, *Adams v. Tyson Foods, Inc.*, No. 07–CV–4019, 2007 WL 1539325, at *2 (W.D. Ark. May 25, 2007); a Motion to Intervene and To Stay filed by the Department of Justice, *Israel Antonio-Morales v. Bimbo's Best Produce, Inc.*, CIV.A.8:5105, 2009 WL 1591172, at *2 (E.D. La. Apr. 20, 2009); a Motion to Facilitate Identification and Notification of Similarly Situated Employees, *Ruffin v. Entm't of the E. Panhandle*, No. 3:11–CV–19, 2012 WL 28192, at *2 (N.D. W.Va. Jan. 5, 2012); and an Order deferring a Motion for Collective Certification so that the parties could participate in a mandatory settlement conference, *Helton v. Factor 5, Inc.*, C 10-04927 SBA, 2011 WL 5925078, at *2 (N.D. Cal. Nov. 28, 2011).  Although those cases are meant to be illustrative in nature and do not provide an exhaustive list, none of those extraordinary circumstances are present in this matter.

Here, Plaintiffs' primary concern that they use as justification for equitable tolling—the need for limited discovery and the multiple delays caused by GNC in that process—is not warranted.  As the case law indicates, those situations are not substantially different from other FLSA matters in which courts have declined to impose this extraordinary remedy.  The use of limited discovery at the outset of this process and the relatively light threshold to achieve conditional certification before significant discovery occurs is precisely to preserve the statute of limitations by allowing putative opt-in plaintiffs to join the class as early as possible.  Even when faced with somewhat significant delays throughout the litigation, neither the Court nor the

Defendants prohibited any of putative members who may now be foreclosed from this matter from pursuing an individual or collective action for relief.  To the Court, if the allegations of Plaintiffs are true, it is quite possible that a reasonably prudent plaintiff (*i.e.*, a GNC Store Manager) would have known of his or her right to receive just compensation for overtime pay.

The Court also does not find those cases in which the court granted equitable tolling based on litigation delays cited by Plaintiffs persuasive.  Our court of appeals express guidance—that this remedy is to be applied "sparingly" and only in "extraordinary circumstances"—compels this result.  Indeed, even a cursory review of the docket indicates that the delays Plaintiffs faced were not overly burdensome and certainly not extraordinary: roughly a seven month delay (September 12, 2011 to April 11, 2012) between their Motion for Conditional Certification and argument on the matter, an interval that included reassignment to the undersigned on January 5, 2012 and a Joint Motion to Reschedule Oral Argument filed on March 13, 2012; approximately a four month delay (April 11, 2012 to August 16, 2012) between argument and this Court's Memorandum Opinion and Order of Court which conditionally certified the class; and a yet to be determined delay between the date of this Court's Order and the issuance of the notice to all putative plaintiffs based on the parties failure to agree on the contents of the proposed notice.  Accordingly, based on the record as it presently stands, the Court will deny Plaintiffs' Motion for Equitable Tolling of Statute of Limitations without prejudice and grant Defendants' Motion to Clarify the Conditional Certification Order Dated August 16, 2012 to the extent that the applicable statute of limitations will be three years from the date the putative plaintiffs opt-in.

**B.  Senior Store Managers**

The parties next dispute whether Senior Store Managers are putative plaintiffs and thus

should receive notice.  The Court's August 16, 2012 Memorandum Opinion and Order of Court did not address whether Senior Store Managers were included in the conditionally certified collective action comprised of "all present or former Managers."  (Doc. No. 109 at 16, 19). However, the Court explicitly did not extend conditional certification of the collective class to include Assistant Store Managers and other non-exempt employees as Plaintiffs originally sought.  That ruling was based on a finding that "[t]here is a distinct difference between the store Managers and these other categories of employees, namely the responsibilities associated with setting the work schedule and subsequently approving the Final Payroll Report."  (Doc. No. 109 at 16).

Defendants now rely on that language to form the basis of their argument that Senior Store Managers, as supervisors, should not be placed in the same class as the subordinate Store Managers because they have conflicting interests.  According to Defendants, this Court already recognized the inherent conflict between supervisory and non-supervisory employees when it expressly did not include Assistant Store Managers in the putative class.  Defendants now seek to extend that reasoning to prohibit Senior Store Managers from being part of the FLSA collective action.

Defendants attempt to show the alleged conflict by highlighting the Senior Store Managers' supervisory role and the testimony of the named Plaintiffs with regard to interactions they had with their respective Senior Store Managers.  First Defendants highlight the supposed differences between the two positions and they state:

> Senior Store Managers supervise and manage Store Managers.  Each SSM is responsible for overseeing and approving the schedules and clerical hours of the 5 or 6 stores they supervise.  In addition to their management responsibilities of a single store, the job duties of SSMs include: "[a]ssist the RSD by communicating with Store Managers in order to collect information, help train and supervise the operations of all assigned stores."

16

(Doc. No. 111 at 10) (citing Doc. No. 111-1 ("Senior Store Manager job description")) (alterations in original).  Second, Defendants contend that the testimony of Vargas and Hickok demonstrate that their Senior Store Managers, as opposed to a Regional Sales Director, encouraged and/or directed their clocking practices and thus were complicit in GNC's alleged de facto policy.  From those two examples and an incomplete recitation of a Senior Store Manager's job description, it appears that Defendants seek to have the Court prohibit all GNC Senior Store Managers from also comprising the conditionally certified class.

In response, Plaintiffs dispute the position offered by Defendants and argue that Store Managers and Senior Store Managers are similarly situated enough to deserve collective treatment.  Plaintiffs also rely on the job descriptions for those positions, claiming that only two (2) very minor differences separate the job duties and responsibilities.  Although the Court counts three differences, which are as follows: (1) Senior Store Managers "Sell merchandise to customers by following GNC's prescribed selling methods 35% of the time;" Store Managers are to spend 50% of their time on the identical task; (2) Senior Store Managers are to spend 10% of their time of that 15% differential to "Assist the RSSD by communicating with Store Managers in order to collect information, help train, and supervise the operations of all assigned stores;" and (3) Senior Store Managers are to spend the remaining 5% of their time to "Complete special projects as assigned by the RSD."  Thus, as Plaintiffs contend, these differences are not so great as to bar the inclusion of Senior Store Managers as putative plaintiffs, as the legal test for individuals to pursue a collective action against their employer is that they must be similarly situated, not identically situated.

This Court has previously discussed and applied at length the two-tiered analysis employed when deciding whether a suit brought under § 216(b) may move forward as a

collective action.  *See* Doc. No. 109 at 6-16.  For the sake of clarity, the Court will briefly summarize that discussion salient to the present issue.

During the initial phase, "the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff."  *Symczyk*, 656 F.3d at 192.  At the first step of the inquiry, "the plaintiff . . . [must] make a modest factual showing that the proposed recipients of opt-in notices are similarly situated."  *Id.* (internal quotation marks omitted).  To make that lenient factual showing, the "plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees.  *Id.* at 194 (citing *Smith v. Sovereign Bancorp, Inc.*, No. 03–2420, 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003)); *see Scott v. Bimbo Bakeries, USA, Inc.*, CIV.A. 10-3154, 2012 WL 645905 (E.D. Pa. Feb. 29, 2012) ("[A]t this preliminary stage of the case, these differences among proposed class members and the potential impact of FLSA exemptions do not undermine Plaintiff['s] modest factual showing."); *see also Burkhart-Deal v. Citifinancial, Inc.*, 07-1747, 2010 WL 457127 (W.D. Pa. Feb. 4, 2010) ("[A] defendant's claim or defense that individualized circumstances of employees render the matter unsuitable for collective treatment may be more appropriately reviewed during step two of the certification process.").  "[I]f the plaintiff carries her burden at this threshold stage, the court will 'conditionally certify' the collective action for the purposes of notice and pretrial discovery."  *Id.* at 192.

After discovery, and with the benefit of a much thicker record than it had at the notice stage, a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named

plaintiff." *Id.* at 193 (internal quotation marks omitted).  If the plaintiff carries his or her heavier burden during the second phase "the case may proceed to trial as a collective action."  *Id.*

Here, Plaintiffs have made the modest factual showing necessary and the reasoning previously employed by this Court in its August 16, 2012 Memorandum Opinion extends with equal force.  In that Memorandum Opinion, the Court discussed at length how Plaintiffs met their burden and concluded:

> Plaintiffs have demonstrated, at least in terms of the requisite showing appropriate at this stage, that an approach toward overtime instituted by DVPs, conveyed by DSDs, subsequently implemented by RSDs, and as applied to store Managers, had the effect of encouraging off-the-clock work through a tone of resistance to reported overtime (authorized or not), and that such an approach was ultimately translated to store Managers in the form of a prohibition of overtime in and of itself notwithstanding the written policies set forth in the employee handbook and elsewhere.

Doc. No. 169 at 16.   The Court conditionally certified the collective action based on that showing, expressly excluding Assistant Store Managers and other non-exempt employees from the class because there is a distinct difference between the Store Managers and these other categories of employees, namely the responsibilities associated with setting the work schedule and subsequently approving the Final Payroll Report.  *See also id.* ("[I]t was the limitation imposed on store Managers to curtail overtime that collided with the other requirements of operating and maintaining each store and allegedly put the Managers in the untenable position of having to complete necessary duties off the clock.").   Senior Store Managers share in those differences to the exact same extent.

Indeed, Senior Store Managers share in all eight (8) essential duties and responsibilities listed in the job description for Store Managers.  *Compare* Doc. No. 113-1 at 22-23 ("Job Description of Senior Store Manager) *with* Doc. No. 113-1 at 24-25 ("Job Description of Senior Store Manager).  Among the essential functions of their jobs, both Store Managers and Senior

Store Managers "[m]anage work schedules within established budgets for optimal store coverage," "[p]erform all register operations," and "[c]omplete all daily register and store open/close functions and bank deposits according to GNC policies and procedures." *Id.* At this juncture, the Court is not persuaded that the three additional duties and responsibilities of Senior Store Managers merits a finding that they are not similarly situated to the named Plaintiffs. Any differences among the putative class members does not undermine the modest factual showing; if more extensive discovery reveals that Senior Store Managers are in fact not similarly situated, that issue is more appropriately reviewed during step two of the certification process.

The Court is also not persuaded that Senior Store Managers should not be included in the putative class based on the testimony submitted by Defendants which they use in an attempt to create a conflict. To foreclose all Senior Store Managers from the opportunity to opt-in and proceed in this collective action based on the isolated testimony is anything but equitable. Accordingly, the Court will amend its August 16, 2012 conditional certification Order to reflect that the conditionally certified collective action is also comprised of Senior Store Managers.

### C. Form and Type of Notice

As an initial matter, all parties agree that notice by first-class mail is an appropriate method to provide putative opt-in plaintiffs notice of this action and their right to opt-in. The parties do not, however, agree on whether first-class mail should be the only form of notice.

Plaintiffs seek this Court to authorize posting of the notice, in addition to notice by first-class mail, in a conspicuous place in an employee area of GNC store locations. According to Plaintiffs, posting "provides a balance of efficient and effective notice dissemination." (Doc. No. 117 at 2). Plaintiffs also request the right to reserve and revisit the permissibility of communicating by e-mail should notification by first-class mail prove to be insufficient.

Defendants submit that notice by first-class mail is suitable as the sole form of notice. Defendants argue that the inappropriateness of posting is particularly apparent in this case because Plaintiffs have not identified that notice through mail is insufficient and to require "GNC to post notice in the thousands of stores in Divisions 1 and 2 would improperly shift the cost of providing notice from [P]laintiffs to [Defendants]."   (Doc. No. 119 at 4).   Defendants also dispute the use of e-mail on the basis that Rule 7.3 of the Pennsylvania Rules of Professional Conduct prohibits e-mail solicitations of non-parties by Plaintiffs' counsel and that GNC neither maintains a database of Store Manager E-mail addresses nor provides Store Managers with company e-mail addresses.

District courts have discretion in the implementation of notice to putative opt-in plaintiffs and it is the Court's "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way."  *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989); *see Harris v. Healthcare Services Group, Inc., CIV.A. 06-2903*, 2007 WL 2221411, at *4 (E.D. Pa. July 31, 2007) (citations omitted).  The United States Supreme Court "has admonished that district courts 'must be scrupulous to respect judicial neutrality'" *Fisher,* 2007 WL 2221411, at *4 (quoting *Hoffmann-La Roche*, 493 U.S. at 174).  To that end, the Supreme Court further cautioned that district courts "must take care to avoid even the appearance of judicial endorsement of the merits of the action."  *Hoffmann-La Roche*, 493 U.S. at 174)

In *Kuznyetsov v. West Penn Allegheny Health Systems, Inc.*, Judge Ambrose faced a similar request from Plaintiffs in an FLSA collective action where they sought, *inter alia*, "[n]otices and opt-in forms to be posted by Defendants in a conspicuous place at Defendants' locations where employees can see such notices during the pendency of the lawsuit" and

"[n]otices and opt-in forms to be e-mailed to employees."   CIV. A. 09-CV-379, 2009 WL

1515175, at *6 (W.D. Pa. June 1, 2009).   The district court deemed those notice proposals

improper and the content objectionable, finding that first-class mail was the only appropriate

form of notice.   *Id.*   Moreover, the court stated that

> [i]n contrast [to first-class mail], electronic communication inherently has the
> potential to be copied and forwarded to other people via the internet with
> commentary that could distort the notice approved by the Court.   Electronic mail
> heightens the risk that the communication will be reproduced to large numbers of
> people who could compromise the integrity of the notice process.   In addition,
> email messages could be forwarded to nonclass members and posted to internet
> sites with great ease.   First-class mail ensures, at the outset, that the appropriately
> targeted audience received the intended notification and maximizes the integrity
> of the notice process.

*Id.* (quoting *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630–31 (D. Colo. 2002)).   Based on

that reasoning, the court ultimately concluded that "Plaintiffs have not provided any reason why

first-class mail would be inadequate in this case" and therefore, limited notification to that form.

Here, the Court will take a similar approach and agrees with GNC to the extent that

posting notice and e-mailing notice are not appropriate at this time.   Plaintiffs have not offered

any persuasive justification that notification by first-class mail would be inadequate; that is, there

is no record evidence that the putative class members who would benefit the most from a

duplicative form of notice—current GNC Store Managers and Senior Store Managers—are

either difficult to determine or contact.   At this juncture, it is also difficult to determine any

appreciable risk that the putative opt-in plaintiffs would not receive the notice.   The Court will, if

necessary, entertain revisiting this issue to ameliorate a deficiency should first-class mail prove

to not be sufficient.

As noted in the August 16, 2012 Memorandum Opinion, court-approved notice is

appropriate in this case.   The parties will be directed to meet and confer to devise a fair and accurate

notice and procedure that is reasonable and agreeable to the parties and the Court.   The parties shall

submit a joint proposed notice and consent form consistent with this Memorandum Opinion on or before November 5, 2012; however, if the parties cannot agree on the proposed notice and consent form, counsel shall each submit a proposed notice and consent form, apprising the Court in writing of the specific reason(s) why they were unable to submit a joint proposal.  The Court encourages the parties to resolve any remaining disputes with regard to the content of the notice and/or consent form in order to expedite this phase of the litigation and to prevent further delay.

Defendants are also directed forthwith to provide Plaintiffs with the names and last known addresses of persons that fall within the conditionally certified group.  Counsel for the named representative Plaintiffs shall then send a copy of the Court-approved notice and consent form to all putative opt-in plaintiffs via first-class mail and shall bear all costs relating to the sending of that notice and consent form.  The putative plaintiffs shall opt-in within seventy-five (75) days of receiving the notice.  All consent forms shall be returned to counsel for Plaintiffs, date-stamped and logged in chronological order (for statute of limitations purposes) to be collectively filed of record at the conclusion of the opt-in period.

## Conclusion

For the reasons hereinabove set forth, Defendant's MOTION TO CLARIFY THE CONDITIONAL CERTIFICATION ORDER DATED AUGUST 16, 2012 (Doc. No. 110) will be granted in part and denied in part; Plaintiffs MOTION FOR EQUITABLE TOLLING OF STATUTE OF LIMITATIONS (Doc. No. 114) will be denied without prejudice.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DOMINIC VARGAS, ANNE HICKOK**<br>*on behalf of themselves and all others similarly<br>situated*,<br><div align=center>**Plaintiffs,**</div><br><div align=center>**v**</div><br>**GENERAL NUTRITION CENTERS, INC.**<br>*A Delaware Corporation and* **GENERAL<br>NUTRITION CORPORATION,**<br><div align=center>**Defendants.**</div> | )<br>)<br>)<br>)  **2:10-cv-867**<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER OF COURT**

AND NOW, this 26th day of October 2012, in accordance with the with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that Plaintiffs MOTION FOR EQUITABLE TOLLING OF STATUTE OF LIMITATIONS (Doc. No. 114) is **DENIED WITHOUT PREJUDICE**; and Defendant's MOTION TO CLARIFY THE CONDITIONAL CERTIFICATION ORDER DATED AUGUST 16, 2012 (Doc. No. 110) is **GRANTED IN PART AND DENIED IN PART**, as more fully set forth in the foregoing Memorandum Opinion.  The Court's Order dated August 16, 2012 is hereby amended to read as follows:

A collective action is conditionally certified, comprised of:

all present or former Store Managers and Senior Store Managers of Defendants General Nutrition Centers, Inc. and/or General Nutrition Corporation (collectively "GNC") in Division 1 and Division 2 of the GNC retail organizational structure who, during the three years prior to the date they opt-in to this action, may have been affected by the de facto policy against overtime alleged in the First Amended Complaint.

Defendants shall forthwith provide to counsel for Plaintiffs and the Court a list of the names and last known addresses of all present and former Store Managers and Senior Store Managers as above

referenced for said relevant time period.  The parties are further directed to confer and submit a joint

proposed notice and consent form to be sent to all putative plaintiffs on or before noon on November

5, 2012; if the parties cannot agree on a joint proposed notice and consent form, they shall submit

their separate proposals and a letter brief apprising the Court in writing of the specific reason(s) why

they were unable to do so, on or before noon on November 5, 2012.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:    **Adrian N. Roe, Esquire**
Email: aroe@roelawoffice.com
**Michael D. Simon, Esquire**
Email: MDSimon20@msn.com

**Gordon W. Schmidt, Esquire**
Email: gschmidt@mcguirewoods.com
**Brad A. Funari, Esquire**
Email: bfunari@mcguirewoods.com
**Christopher M. Michalik, Esquire**
Email: cmichalik@mcguirewoods.com