IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOMINIC VARGAS, ANNE HICKOK** *on behalf of themselves and all others similarly situated*, <br> **Plaintiffs,** <br><br> v <br><br> **GENERAL NUTRITION CENTERS, INC.** *A Delaware Corporation and* **GENERAL NUTRITION CORPORATION,** <br><br> **Defendants.** | 2:10-cv-867 |

## MEMORANDUM OPINION ORDER OF COURT

The parties, counsel, and the Court are intimately familiar with the background facts and procedural history of this case and, therefore, the Court will not recite the facts at length again. *See Vargas v. Gen. Nutrition Centers, Inc.*, 2:10-CV-867, 2012 WL 5336166 (W.D. Pa. Oct. 26, 2012) (McVerry, J.); *Vargas v. Gen. Nutrition Centers, Inc.*, 2:10-CV-867, 2012 WL 3544733 (W.D. Pa. Aug. 16, 2012) (McVerry, J.); *Vargas v. Gen. Nutrition Centers, Inc.*, CIV.A. 10-867, 2011 WL 43020 (W.D. Pa. Jan. 6, 2011) (Standish, J.). The following is a brief recitation of the procedural history relevant to the issues presently before the Court.

### I. Background

On February 11, 2013, Class Counsel filed of record the Court-approved consent forms received from the putative plaintiffs at the expiration of the agreed upon seventy-five (75) day opt-in period. The Court conducted a status conference on February 19, 2013 during which the parties discussed alternative dispute resolution, the scope of discovery, and the size of the putative class. The parties also informed the Court of numerous other issues, including those mailings returned as "undeliverable" and the inadvertent nondisclosure of roughly three hundred persons from the original class mailing list. At the close of the conference, the Court directed the

parties to jointly submit a proposed discovery plan setting forth their respective positions on the issues discussed.

## II.   Discussion

The Court is in receipt of the JOINT PROPOSED CASE MANAGEMENT PLAN (ECF No. 129) filed on March 13, 2013 and is encouraged that the parties agree on a number of matters. Nevertheless, they have not reached a mutually acceptable position on a host of other issues. The following addresses both the joint proposals and the respective concerns that each has raised.

A. Overall Litigation Plan

Initially, the parties jointly submit that the Court address the litigation in four phases: (i) pre-mediation; (ii) mediation; (iii) decertification; and (4) merits. The parties also inform the Court that they have made substantial progress in formulating a plan for the pre-mediation and mediation phases but that they have substantial disagreements regarding the management of the litigation should the case not settle at mediation. The parties therefore request that the Court excuse them from filing a proposed case management plan on decertification and the merits until two (2) weeks after they complete mediation.

The Court will grant this request, and will address the proposed procedures with respect to the pre-mediation and mediation phase.

1. Pre-Mediation Phase

The parties agree on all matters in the pre-mediation phase, including the size of the representative sample, the scope of written discovery, and the number of depositions.[1] Accordingly, the Court will grant each of the proposals as set forth more fully in the filing.

---

1. The filing states that "[e]ach party will be permitted to depose up to ten (15) persons within the sample." ECF. No. 129 at 3. The Court reads the disparity in the parenthetical as a typographical error. *See* Fed. R. Civ. P. 30. Therefore, the number of depositions per party will be ten (10).

2. Mediation Phase

The parties likewise agree that they will engage in mediation before Hon. Donald E. Ziegler in or about mid-July 2013 and that Class Counsel will arrange a mutually convenient date. Additionally, the parties note that the mediation process may occur over a period of time. The Court understands that the mediation process selected may exceed a single day given the magnitude and complexity of this case and will order the parties to commence mediation with their designated Neutral on or before July 31, 2013.

B. Notice

Presently, the size of the opt-in class for which consents have been filed is 404 persons. The parties identify other putative class members based on (1) the inadvertent nondisclosure of 288 persons to which notice was sent on February 11, 2013 with an opt-in response due by April 29, 2013; (2) the 233 undeliverable notices from the original mailing on November 21, 2012 (ECF No. 125); and (3) the 38 undeliverable notices from the mailing on February 11, 2013. To locate these seemingly otherwise unreachable putative class members, Defendants engaged and paid for a search service, Kurtzman Carson Consultants LLC. Those experts utilizing a "skip tracing" technique located 169 new addresses but could not find sixty-two (62) new addresses. A group mailing of the Notice will be issued to those 169 individuals on or before April 1, 2013 and are to be returned on or before the July 15, 2013 close of the seventy-five (75) day opt-in period.

1. Procedures on "Returned" Notices

The parties disagree on the procedure (if any) to be utilized should Class Counsel receive any additional notices as "undeliverable" from the initial November 2012 mailing, the February 11, 2013 mailing, and/or the third mailing to be dispatched on or before April 1,2013.

Class Counsel propose two protocols for notifying the individuals irrespective of which "group" the putative member may fall within. First, they submit that "[w]here email addresses can be located, they shall be provided to Plaintiffs and email contact shall be attempted." ECF No. 129 at 5. Second, they recommend that "[w]here no email contact information exists or if the email contact information provided is ineffective, Plaintiffs' counsel shall be provided with the last known telephone number of the putative class member" and "[t]he parties will agree on a protocol for contact with any such individuals for which telephone numbers have been furnished." ECF No. 129 at 6. Not surprisingly, both positions are substantially similar to those previously advanced at the conditional certification stage when the parties disputed the form and type of notice.

Likewise, Defendants rely upon the arguments they briefed at the conditional certification stage. Defendants also highlight that the roughly 60 putative opt-in class members for whom the vendors did not find new addresses represent approximately one and one-half percent (1.5%) of the roughly 4,000 person putative class. Accordingly, they submit that the need to have a class finally settled militates against conducting any further efforts to contact those in question.

The Court discussed the form and type of notice at length in its October 26, 2012 Memorandum Opinion, specifically the (in)appropriateness of electronic communication as a means to locate putative class members at the outset. *See* ECF No. 121 at 20-25. After considering the options presented, the Court ultimately decided that notification by first-class mail should prove sufficient. The Court did, however, note that it may revisit the issue to ameliorate a deficiency if first-class mail was inadequate.

The Court again concludes that first-class mail is the appropriate and exclusive form of notice to be utilized in this matter. Class Counsel have not demonstrated with adequacy that

4

their inability to locate a relatively small percentage number of putative class members renders the Court-approved method of notice ineffective. Rather, Defendants have undertaken numerous steps at their own expense to locate all but roughly sixty (60) putative opt-in plaintiff class members. Other factors weighing against alternative methods of notice include: that Defendants did not maintain employee e-mail addresses during much of the class period; that the success of locating putative class members based on telephonic outreach is low when the use of a specialized skip tracing firm was utilized; and that the Pennsylvania Rules of Professional Conduct may impact any attempt to contact putative class members through those alternative methods.

Accordingly, the original February 4, 2013 opt-in deadline, the April 29, 2013 opt-in deadline for the 288 persons inadvertently undisclosed in the initial list; and the July 15, 2013 opt-in deadline for those found by skip tracing are firm and final dates by which Class Counsel must abide. The Court will neither permit Class Counsel to use additional methods of service to contact any individual in the first, second, or third mailing group for whom new addresses cannot be acquired nor compel Defendants to further expend resources in their effort to locate those individuals. The Court highlights the need to have a definite class and views any issue regarding the method of service as decisively determined.

        2.    <u>Returned First Mailing Received by Class Counsel After February 4, 2013</u>

Class Counsels' final position relates to the timeliness of consents from the initial mailing received after the most recent status conference. From the perspective of Class Counsel, the Court should deem any consent filed after the initial deadline timely unless the delay was due to the mail being forwarded. Class Counsel reasons that the administrative bar date connected with the first mailing is largely moot because of the additional mailing of notices and associated opt-

in deadlines.

Defendants object to the inclusion of any individual who did not abide by the agreed upon time limit of seventy-five (75) days. Defendants again highlight their absolute need for a defined class. The Court agrees.

The Court unambiguously set forth an opt-in period of seventy-five (75) days, a timeframe to which the parties jointly proposed and agreed. Page One of the jointly-proposed Notice is also far from confusing:

**DEADLINE**

**If you wish to participate in this suit, you must execute a Plaintiff's Consent Form and submit the form to Plaintiff's Counsel within seventy-five (75) days from your receipt of this Notice.**

ECF No. 124 at 1. Sufficiently conspicuous, the letter sent to the putative opt-in class members explicitly give them notice of their rights and the deadline within which they must join this lawsuit. Late filings are no longer the Court's concern. Despite Class Counsels' concluding remarks that "barring claims from the first mailing . . . might produce unnecessary ancillary litigation," the Court's October 26, 2012 Memorandum Opinion on equitable tolling applies with equal force to this request. ECF No. 129 at 7. Accordingly, the Court will not permit the inclusion of any individual in this lawsuit who did not file a consent within the abundantly clear deadline of seventy-five (75) days.

### 3. Voluntary Dismissal

The parties have informed the Court that Ms. Lisa Fagan no longer wishes to participate in this case. Without objection, the Court will grant her request for voluntary dismissal.

### III.    Conclusion

For the reasons hereinabove set forth, the Court will approve the Joint Proposed Case Management Plan in part and modify it in part.  An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DOMINIC VARGAS, ANNE HICKOK** *on behalf of themselves and all others similarly situated*, <br> **Plaintiffs,** <br><br> v <br><br> **GENERAL NUTRITION CENTERS, INC.** *A Delaware Corporation and* **GENERAL NUTRITION CORPORATION,** <br><br> **Defendants.** | ) ) ) ) ) **2:10-cv-867** ) ) ) ) ) ) ) ) ) |

## ORDER OF COURT

AND NOW, this 15th day of March 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** as follows:

(1) the agreed upon and complete provisions of the Joint Proposed Case Management Plan (ECF No. 129) as set forth in I. Overall Litigation Plan; A. Pre-Mediation Plan; and B. Mediation Phase –Phase I are approved and are to be implemented in their entirety;

(2) the parties shall commence mediation on or before July 31, 2013;

(3) the original February 4, 2013 opt-in deadline, the April 29, 2013 opt-in deadline for the 288 persons inadvertently undisclosed in the initial list; and the July 15, 2013 opt-in deadline for those found by skip tracing are firm and final dates by which the parties shall abide;

(4) The parties are prohibited from utilizing additional methods of service to contact any individual in the first, second, or third mailing group for whom new addresses have not been acquired;

(5) any individual(s) who did not file a consent form within the applicable respective deadline of seventy-five (75) days may not participate in this lawsuit;

(6) the parties shall file a proposed case management plan addressing the decertification phase and the merits phase if the case does not settle within two weeks of the completion of mediation; and

(7) without objection, Ms. Lisa Fagan is voluntarily DISMISSED from this action.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:  **Adrian N. Roe, Esquire**
Email: aroe@roelawoffice.com
**Andrew G. Nagurney, Esquire**
Email: dnagurney@roelawoffice.com
**Michael D. Simon, Esquire**
Email: MDSimon20@msn.com

**Gordon W. Schmidt, Esquire**
Email: gschmidt@mcguirewoods.com
**Brad A. Funari, Esquire**
Email: bfunari@mcguirewoods.com
**Christopher M. Michalik, Esquire**
Email: cmichalik@mcguirewoods.com